DEC 0 4 2015

TONY R. MOORE, CLERK
BY _____ DEPU

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

b

GARY WAYNE ANDERSON,
            Plaintiff

VERSUS

CLARENCE HALL, et al.,
            Defendants

CIVIL ACTION
SECTION "P"
NO. 1:15-CV-0-407


JUDGE JAMES T. TRIMBLE, JR.
MAGISTRATE JUDGE JAMES D. KIRK

<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se prisoner Gary Wayne Anderson ("Anderson") on February 19, 2015 (Doc. 1). The sole remaining defendant is Clarence Hall, a Sergeant in the Ferriday Police Department, and Anderson's only remaining claim is one for false arrest (Doc. 26).[1] Anderson contends Hall falsely arrested him for murder (of Erick Johnson) and for being a felon in possession of a firearm, on less than probable cause and on false evidence, and that a grand jury refused to indict Anderson.[2] Anderson further contends he was chased by the victim's family

_____

[1] Anderson's other claims and the other named defendants have already been dismissed (Doc. 26).

[2] Anderson contends the grand jury refused to indict him on the charges of first degree murder, armed robbery and conspiracy (Doc. 1). Sergeant Hall requested arrest warrants on Anderson for attempted second degree murder and possession of a firearm by a convicted felon (Doc. 30, Exs.). The arrest warrants for armed robbery and criminal conspiracy, as well as criminal damage to property and illegal use of weapons or dangerous instrumentalities, were requested by Investigator Derrick Freeman, and not by Sergeant Hall.

members with a firearm, and that his own family was threatened. Anderson contends he fled the area out of fear, resulting in a violation of his parole. For relief, Anderson asks for monetary damages and to have his parole reinstated. Anderson is presently incarcerated in the Madison Parish Correctional Center in Tallulah, Louisiana.

Hall filed a motion to dismiss for failure to state a claim on which relief may be granted and claiming qualified immunity, with attached documentary exhibits (Doc. 30), to which Anderson responded (with attached documentary exhibits) (Doc. 41) and Hall replied (Doc. 42). Hall's motion to dismiss is now before the court for disposition.

The Court cannot consider extrinsic evidence in ruling on a 12(b)(6) motion. <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). If it does so, it converts the motion into one for summary judgment under Federal Rule 56, requiring notice and the opportunity to present evidence. See Fed. R. Civ. Proc. 12(b). Since, in the case at bar, both parties have filed extrinsic evidence with their briefs, the motion will be considered as one for summary judgment, and further notice is not required.

<u>Law and Analysis</u>

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

3

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.   In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.   Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).   However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.   Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Official Capacity Claim for False Arrest

Anderson did not specify in his complaint whether he is suing Hall in his official and/or individual capacities.   Hall contends that Anderson has not stated an official capacity claim against him.

A suit brought against a defendant in his official capacity is, effectively, a suit against the governmental unit that employs the defendant.   Monell v. Dept. of Social Services, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55 (1978); Brooks v. George County, Ms., 84 F.3d 157, 165 (5th Cir. 1996), cert. den., 519 U.S. 948, 117 S.Ct. 359 (1996).[3]

_____

[3] Municipal liability under §1983 attaches where, and only where, a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the

4

Hall contends he is entitled to qualified immunity. However, the defense of qualified immunity is not available to a defendant sued in his official capacity because municipalities are not entitled to qualified immunity, Owen v. City of Independence, Mo., 445 U.S. 622, 650, 100 S.Ct. 1398, 1415 (1980).

A plaintiff seeking to impose liability on a municipality under Section 1983 is required to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Board of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388 (1997). In Burge v. Parish of St. Tammany, 187 F.3d 452, 471 (5th Cir. 1999), the Fifth Circuit explained that the official policy requirement may be met in at least three different ways: (1) when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy, (2) where no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental

subject matter in question. Pembaur v. City of Cincinnati, 475 U.S. 469, 484, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.  Burge, 187 F.3d at 471, and cases cited therein.

Anderson has not alleged any policy or custom of the City of Ferriday which violated his constitutional rights.  Anderson has also not alleged or shown that Captain Hall was acting pursuant to any municipal policy or custom when he allegedly put false information on an affidavit in support of an arrest warrant (concerning a statement made by the victim, Erick Johnson) and allegedly coerced Moek Hawkins into identifying Anderson as the man who shot Erick Johnson.

Therefore, Hall's motion to dismiss should be granted as to Anderson's official capacity claims against Hall.

Individual Capacity Claims for False Arrest

Anderson contends that Captain Hall falsified information in order to obtain arrest warrants for Anderson on charges of murder and felon in possession of a firearm.  Specifically, Anderson contends Hall falsely claimed to have interviewed the murder victim, Erick Johnson, in order to establish probable cause to arrest Anderson for murder, armed robbery, and conspiracy (Doc. 1). Anderson further contends that Captain Hall coerced Moek Hawkins into identifying Anderson as the shooter (Doc. 1).

6

Hall contends Anderson's complaint should be dismissed because there was probable cause to support Anderson's arrests for murder and felon in possession of a firearm, as well as his arrests on four other charges on warrants obtained by another officer.  Hall also contends that he is entitled to qualified immunity in his individual capacity.

1.

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident.  Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996).  Qualified immunity cloaks a police officer from personal liability for discretionary acts which do not violate well established law.  Officers have qualified immunity if their actions could reasonably have been thought consistent with the right they are alleged to have violated.  Richardson v. Oldham, 12 F.3d 1373, 1380-81 (5th Cir. 1994), and cases cited therein.  Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.  Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002).

Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their

7

performance of official duties:

> "The defendant official must initially plead his good
> faith and establish that he was acting within the scope
> of his discretionary authority. Once the defendant has
> done so, the burden shifts to the plaintiff to rebut this
> defense by establishing that the official's allegedly
> wrongful conduct violated clearly established law."

Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001), citing

Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).

The bifurcated test for qualified immunity is: (1) whether the

plaintiff has alleged a violation of a clearly established

constitutional rights; and, (2) if so, whether the defendant's

conduct was objectively unreasonable in the light of the clearly

established law at the time of the incident. Hare v. City of

Corinth, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

2.

The constitutional torts of false arrest, unreasonable

seizure, and false imprisonment require a showing that there was no

probable cause. Brown v. Lyford, 243 F.3d 185, 189 (5th Cir.

2001), cert. den., 122 S.Ct. 46 (U.S. 2001). The right to be free

from arrest without probable cause is a constitutional right that

was clearly established in 2013. See Beck v. Ohio, 379 U.S. 89,

91, 85 S.Ct. 223, 225 (1964) (the right to be free from arrest

without probable cause is a clearly established constitutional

right).

An officer has probable cause to arrest if, at the time of

the arrest, he had knowledge that would warrant a prudent person's

8

belief that the person arrested had already committed or was committing a crime. See <u>Gladden v. Roach</u>, 864 F.2d 1196, 1199 (5th Cir.), cert. den., 491 U.S. 907, 109 S.Ct. 3192 (1989). Also, <u>Hunter v. Bryant</u>, 502 U.S. 224, 228, 112 S.Ct. 534 (1991). If probable cause for an arrest even arguably existed, immunity cannot be lost. <u>Brown</u>, 243 F.3d at 190.

The plaintiff has the burden of proving a civil rights violation under § 1983 by a preponderance of the evidence. <u>Richard v. City of Harahan</u>, 6 F.Supp.2d 565, 570 (E.D.La. 1998), and cases cited therein. Also, <u>Crowder v. Sinyard</u>, 884 F.2d 804, 824 (5th Cir. 1989), cert. den., 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990).

In order to prevail, Anderson must demonstrate that a genuine issue of material fact exists as to whether Hall knowingly provided false information to secure the arrest warrant or gave false information in reckless disregard of the truth. The court must determine whether the warrant would establish probable cause without the allegedly false information. Anderson must then demonstrate an issue of material fact as to whether any reasonably competent officer possessing the information that Hall had at the time he swore his affidavit could have concluded that a warrant should issue. The court must look to the totality of circumstances in making this decision. Even if officers of reasonable competence could disagree on this issue, Hall is still entitled to qualified

immunity.  Freeman v. County of Bexar, 210 F.3d 550, 553 (5th Cir.),

cert. den., 531 U.S. 933, 121 S.Ct. 318 (2000), and cases cited

therein.

Anderson argues that Hall falsely claimed that the victim,

Erick Johnson, identified Anderson as the person who shot him, and

has submitted a notarized statement from James Johnson (Erick

Johnson's brother) to show that, when Erick was in the hospital,

Erick told James that Gary Anderson did not shoot him (Doc. 1,

Ex.).   James Johnson further stated that no police officer

interviewed his brother, Erick, during the one week he was in the

hospital, before he died (Doc. 1, Ex.).  James Johnson's statement

is notarized but was not made under penalty of perjury and is

undated.

Anderson is correct in his assertion that Captain Hall did not

interview Erick Johnson in the hospital.  Instead, Hall's affidavit

in support of the arrest warrant shows that Hall spoke to Erick

Johnson at the scene of the offense, before he was air-lifted to

the hospital, and that Erick Johnson identified Anderson as the

person who followed him when he left the grocery store and shot at

him (Doc. 30, Ex.).   Therefore, Anderson's argument that Hall

falsely claimed to have interviewed Erick Johnson in the hospital

is incorrect and meritless.  Moreover, James Johnson's statement

was clearly written after Anderson was arrested and thus could have

not have affected the existence of probable cause at the time of

the arrest.

Anderson also argues that Erick Johnson's statement to Hall did not fall within the dying declaration exception to the hearsay rule.   However, to establish probable cause, Erick Johnson's statement to Hall did not have to be a "dying declaration" or any other exception to the hearsay rule; the hearsay rule applies to evidence adduced at trial, not to pretrial statements and information which provide probable cause to arrest.

Anderson also submitted an unverified, undated letter written by Moek Hawkins to the District Attorney, in which Hawkins states that neither he nor Anderson participated in the murder of Erick Johnson, although they were present when it occurred, and that Ferriday police officers had threatened him if he did not say that Gary Anderson had shot Erick Johnson (Doc. 1, Ex.).   Since Hawkins' self-serving letter was apparently written after Anderson was arrested, it does not affect the fact that there was probable cause to arrest Anderson at the time of his arrest, based on statements by Erick Johnson, Anwon Ceasor, and Reginald Henderson[4] which implicated Anderson as the shooter.   More importantly, Hawkins' letter does not name Hall as one of the investigators that threatened him.   Therefore, Anderson has not shown that Hall coerced Hawkins into making a false statement to the police, and this argument is also meritless.

---

[4] Hall's incident report shows that Reginald Henderson identified Gary Anderson as having been involved in the shooting.

Anderson argues there is a discrepancy in the dates in Ceasor's statement (July 14) and in Hall's incident report (July 15). Anwon Ceasor gave police a statement that showed Anderson and three other men shot guns at Ceasor and his brother, as well as several other people on July 14; Ceasor stated that he looked directly into Anderson's face when he was shooting his gun, and called 911 and reported the shooting (Doc. 30, Ex.). Hall's report states the incident took place on July 15 (Doc. 30, Ex.). However, that type of argument goes to credibility and the burden of proof at trial, and does not affect the fact that Ceasor, Erick Johnson (the victim) and Reginald Henderson said they saw Anderson present during the incident and shooting at the Johnsons, regardless of the correct date. Those statements provided probable cause for Anderson's arrest.

Since there was evidence to show that Anderson was present and with the group of men who initiated the shooting when it took place, as well as evidence that Anderson was one of the shooters and had actually shot Erick Johnson, there was probable cause to support arrest warrants for Anderson for murder and felon in possession of a firearm.[5]

Finally, as Hall points out, there were four additional arrest warrants for Anderson, filled out by other law enforcement officers, which provide probable cause for Anderson's arrest on

_____

[5] Anderson does not dispute the fact that he was a convicted felon and admits he was on parole when the incident took place.

12

possession of a firearm are supported by probable cause, and Anderson was also arrested on other apparently valid warrants, Anderson has not carried his burden of proving that Hall submitted false information in order to obtain arrest warrants. Hall was not objectively unreasonable when he arrested Anderson pursuant to the six arrest warrants, and he is entitled to qualified immunity in his individual capacity. Therefore, Hall's motion to dismiss should be granted and Anderson's action against Hall should be denied and dismissed with prejudice.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Hall's motion for summary judgment (Doc. 30) be GRANTED and that Anderson's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a  final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ___3rd___ day of December 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE